UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

LINDA LUCERO C. P.,

Petitioner,

v.

WARDEN OF THE CALIFORNIA CITY IMMIGRATION PROCESSING CENTER DETENTION FACILITY,

Respondent.

No. 1:26-cv-06354-RLP

ORDER GRANTING PETITION FOR HABEAS CORPUS

Before the Court is Petitioner Linda Lucero C.P.'s ("Petitioner") petition for writ of habeas corpus. ECF No. 1. Respondents filed a motion to dismiss because Petitioner is subject to mandatory detention based on her past drug conviction under 8 U.S.C. § 1226(c)(1)(A), and because she has not exhausted her administrative remedies. ECF No. 8. Counsel was appointed to represent Petitioner, who opposes the motion to dismiss based on the assertion that her prolonged detention without a bond hearing violates her due process rights.

## BACKGROUND

Ms. C.P. is a native and citizen of Mexico. ECF No. 8 at 11. According to Petitioner, she arrived in the United States approximately 27 years ago with her parents and siblings. ECF No. 1 at 6. In November 1997, at the age of 14, she received Lawful Permanent Resident status. ECF No. 8 at 12. She is married to a United States citizen and has three children who are also U.S. citizens. ECF No. 1 at 6.

On December 4, 2017, Ms. C.P. was convicted of possession of methamphetamine, ECF No. 8 at 24-34, and on September 18, 2018, she was convicted of cruelty to a child by inflicting injury, ECF No. 8 at 45-50. According to Petitioner, after her convictions she "completely change[d] my life" and graduated from college with a degree in nursing. ECF No. 1 at 6. Petitioner states she has a pituitary tumor at the base of her brain and was told in December 2025 that she would be scheduled for surgery in March 2026. ECF No. 1 at 6, 8; ECF No. 11-1 at 2.

On January 14, 2026, Ms. C.P. was encountered by immigration authorities upon arriving at Los Angeles International Airport. ECF No. 8 at 11. According to the Petitioner, Ms. C.P. had traveled to Mexico for her brother's wedding. ECF No. 1 at 8. She then appeared at an appointment on February 18, 2026, where she was taken into custody based on her criminal history. *Id.* She was issued a Notice to

Appear charging her with inadmissibility under 8 U.S.C. §§ 1182(a)(2)(A)(i)(I) & (II) (commission of an act of moral turpitude and controlled substance violation). ECF No. 8 at 15. She has been in custody ever since. Petitioner alleges that she has not received her tumor medication regularly while in custody. ECF No. 1 at 9.

Ms. C.P. has requested cancellation of her removal proceedings because she contends she meets the criteria: she has been a legal permanent resident for more than five years, has resided continually in the United States for more than seven years, and has not been convicted of an aggravated felony. ECF No. 11-1 at 2. A trial on that request was scheduled for May 8, 2026, but was canceled when she was moved from another detention facility to her current location at Adelanto, California. *Id.* A motion to set a merits hearing in Ms. C.P.'s removal proceedings was granted on June 5, 2026; according to the Petitioner, the merits hearing has not yet been scheduled. ECF No. 8 at 55; ECF No. 11-1 at 2.

Ms. C.P. filed this Petition for Writ of Habeas Corpus alleging she has been unlawfully detained since February 18, 2026, and that her ongoing detention without a bond hearing violates the Due Process Clause of the Fifth Amendment. ECF No. 1. Respondents contend Petitioner's methamphetamine-related conviction renders her an inadmissible applicant for admission under 8 U.S.C. § 8 U.S.C. § 1182(a)(2)(A)(i)(II). Therefore, Respondents claim that Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c)(1)(A). On reply, Petitioner contends

that due process requires a bond hearing due to her prolonged detention.

## LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art I, § 9, cl. 2). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). A district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis,* 533 U.S. 678, 687 (2001).

## IMMIGRATION & NATIONALITY ACT

The INA authorizes the Government to detain "certain aliens already in the country pending the outcome of removal proceedings." *Jennings v. Rodriquez*, 583 U.S. 281, 289 (2016). Section 1226(a) sets out the "default rule" for noncitizens already present in the country. *Jennings*, 583 U.S. at 288. Under this discretionary rule, "[a]n immigration officer makes the initial determination to either detain or release the noncitizen, but after that decision has been made, the noncitizen may request a bond hearing before an immigration judge." *Lepe v. Andrews*, 801

F.Supp.3d 1104, 1112 (E.D. Cal. 2025) (citing 8 C.F.R. § 1236.1(c)(8), (d)(1)).

However, section 1226(c) lists exceptions to the default rule: detention is required of noncitizens who have committed certain types of crimes. 8 U.S.C. § 1226(c)(1)(A)-(E). Respondents contend that Petitioner's 2017 conviction for possession of methamphetamine renders her subject to mandatory detention under subsection (A), which is applicable to a noncitizen who "is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title." 8 U.S.C. § 1226(c)(1)(A). One of the offenses listed in § 1182(a)(2) is violation of any law related to a controlled substance. 8 U.S.C. § 1182(a)(2)(A)(i)(II). Thus, based on her 2017 conviction, Ms. C.P. is subject to mandatory detention under § 1226(c).

DUE PROCESS

Ms. C.P. does not appear to challenge the statutory basis of her detention under § 1226(c). ECF No. 11. Instead, Ms. C.P. contends that her due process rights are violated by her detention after many years of living in the community without incident and by her prolonged detention without a bond hearing. At this point, Ms. C.P. has been detained for just over six months.

The Supreme Court upheld the facial constitutionality of mandatory detention under § 1226(c) in *Demore v. Kim*, 538 U.S. 510 at 531 (2003). However, the Supreme Court did so while noting that § 1226(c) detention is relatively "brief" and "limited," and "lasts roughly a month and a half in the vast majority of cases" and

"about five months in the minority of cases in which the alien chooses to appeal." *Id.* at 513, 529 n.12, 530. In a concurring opinion, Justice Kennedy recognizing the viability of as-applied challenges under the majority's framework: "[S]ince the Due Process Clause prohibits arbitrary deprivations of liberty, a lawful permanent resident . . . could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." *Id.* at 532 (Kennedy, J., concurring).

The Ninth Circuit has expressed "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional." *Rodriguez v. Marin*, 909 F.3d 252, 256 (9th Cir. 2018). Other Circuits have concluded that *Demore* does not foreclose as-applied challenges to prolonged detention under § 1226(c). Recently, the Second Circuit held that "[t]he Constitution does not permit the Executive to detain a noncitizen for an unreasonably prolonged period under section 1226(c) without a bond hearing; at some point, additional procedural protections—like a bond hearing—become necessary." *Black v. Decker*, 103 F.4th 133, 145 (2d Cir. 2024). The Court finds this analysis persuasive and agrees that *Demore* does not bar an as-applied challenge to prolonged detention in these circumstances.

The Fifth Amendment Due Process Clause ensures against the deprivation of an individual's life, liberty, or property without due process of law. U.S. Const.

amend. V; *Hernandez v. Sessions,* 872 F.3d 976, 990 (9th Cir. 2017). "[T]he Due Process Clause applies to all 'persons' within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. The clause extends also to immigration proceedings, including detention and deportation proceedings. *Id*. at 693-94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

*a. Protected Liberty Interest*

"Freedom from imprisonment—from government custody, detention, or other forms of physical restrain—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas,* 533 U.S. at 690 (citing *Foucha v. Louisiana*, 504 U.S. 71 (1992)). "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F.Supp.3d 1025, 1032 (N.D. Cal. 2025).

The Court finds Petitioner has a clear liberty interest in her continued freedom protected by the Due Process Clause. The Court therefore finds that Petitioner has a liberty interest protected by the Constitution.

*b. Process Required*

This Court considers the factors set forth in *Mathews v. Eldridge,* 424 U.S. 319, 335 (1976) in determining the process required by the Constitution: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335; *see Henriquez v. Garland*, 2022 WL 2132919, at *5–6 (N.D. Cal. June 14, 2022) (applying *Mathews* test to petitioner's due process claim requesting initial bond hearing).

*1. Private Interest*

The first factor weighs in favor of Petitioner. Her private interest is a right to be free from government imprisonment, and that right is being affected by her continued detention. An individual's private interest in "freedom from prolonged detention" is "unquestionably substantial." *Singh v. Holder*, 638 F.3d 1196, 1208 (9th Cir. 2011). Courts have generally declined to set a threshold for when

detention under § 1226(c) becomes prolonged. *See German Santos v. Warden Pike Cty. Correctional Facility*, 965 F.3d 203, 211 3d Cir. 2020); *Black*, 103 F.4th at 150; *Reid v. Donelan*, 17 F.4th 1, 7–9 (1st Cir. 2021). The Ninth Circuit previously referred to detention longer than six months as prolonged "in the context of detentions for which no individualized bond hearings had taken place at all because the statutes on their faces did not allow for them." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1207 (9th Cir. 2022) (citations omitted). Indeed, some courts within this Circuit have found due process violations where the length of mandatory detention without bond was similar to the length of detention at issue here. *See e.g., Chen v. Aitken*, 917 F. Supp. 2d 1013, 1018 (N.D. Cal. 2013) (holding petitioner's seven-month detention under § 1225(b) was "prolonged" because it "has lasted well beyond the typical period described in *Demore*" and "neither release nor removal are imminent").

Moreover, courts hearing as-applied challenges to § 1226(c) detention have also considered the likely duration of future detention. *See Lopez v. Garland*, 631 F. Supp. 3d 870, 880-81 (E.D. Cal. 2022) (finding petitioner's administrative appeals and likely appeal to the Ninth Circuit weighed toward granting request for bond hearing). In this case, Petitioner's hearing on the merits was previously scheduled for May but was canceled by Respondents due to their decision to transfer Plaintiff. Although she was granted a new merits hearing in June, it is now

September and there is no indication of when that hearing will be scheduled. According to the EOIR Automated Case Information website, Petitioner has a master hearing on September 8, but that will not resolve her proceedings. And even when Petitioner receives a hearing before an immigration judge, it is not necessarily the end of Petitioner's removal proceedings. Either party may choose to appeal the IJ's decision to the Board of Immigration Appeals and Petitioner could ultimately seek review by the Ninth Circuit Court of Appeals. Based on its duration to date and the likelihood of continued mandatory detention during all phases of removal proceedings, the undersigned finds Petitioner's detention is sufficiently "prolonged" under the circumstances to confer a substantial private interest in her own liberty.

*2. Risk of erroneous deprivation*

This factor favors Petitioner. Because civil immigration detention is "nonpunitive in purpose and effect," due process requires that a "special justification" outweigh Petitioner's protected liberty interest. *Zadvydas*, 533 U.S. at 690. While "[t]he government has legitimate interests in protecting the public and in ensuring that noncitizens in removal proceedings appear for hearings," Petitioner has received virtually no procedural safeguards. *Hernandez*, 872 F.3d 976. "[T]he risk of an erroneous deprivation of liberty in the absence of a hearing before a neutral decisionmaker is substantial." *Diouf v. Napolitano*, 634 F.3d 1081,

1092 (9th Cir. 2011) (abrogated on other grounds). Indeed, "[i]n the absence of any meaningful initial procedural safeguards, it appears to us that almost any additional procedural safeguards at some point in the detention would add value." *Black*, 103 F.4th at 153 (emphasis in original). Additional procedures are likely to be meaningful. Petitioner's conviction stems from a non-violent crime committed nearly a decade ago. As a longtime lawful permanent resident, Petitioner has a strong interest in pursuing a defense against removal, thereby making her risk of flight low. She also has strong ties to this country, having lived here for 27 years and having a spouse and children who are U.S. citizens. Accordingly, the second *Mathews* factor also weighs in Petitioner's favor.

*3. Government Interest*

The third factor also favors Petitioner. While the Court recognizes the Government may have an interest in enforcement of immigration laws, its interest in continued detention without procedural protections is "low." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019). The cost required to provide Petitioner procedural safeguards is minimal. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025). Notice and custody determination hearings are routine processes for Respondent. Any burden associated with the provision of these processes does not outweigh Petitioner's substantial liberty interest and the risk of erroneous deprivation. At any ordered bond hearing, the IJ would assess on an individualized

basis whether the noncitizen presents a flight risk or a danger to the community, as IJs routinely do for other noncitizen detainees. *Black*, 103 F.4th at 153–54. In Petitioner's case, the government's interest in further detaining her without a hearing to determine whether such detention is justified is minimal.

Because the *Mathews* factors weigh in favor of Petitioner, the Court finds Petitioner is entitled to notice and a hearing before a neutral decisionmaker regarding her ongoing and prolonged detention under the facts of this case. Accordingly, the Court finds the proper remedy is to grant the petition and order a bond hearing.

**Accordingly, IT IS ORDERED:**

1. The petition for writ of habeas corpus, **ECF No. 1**, is **GRANTED.**

2. Respondents' motion to dismiss, **ECF No. 8**, is **DENIED.**

3. **Within 14 days** of the date of service of this order, unless Petitioner consents to a later date, Respondents **SHALL** provide Petitioner (A# 046303110) with an individualized bond hearing before an immigration judge that complies with the requirements set forth in *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011), and where "the government must prove by clear and convincing evidence that [Petitioner] is a flight risk or a danger to the community to justify denial of bond," *id.* at 1203. In the event Petitioner is "determined not to be a danger to the community and not to be so great a flight risk as to require detention without

bond," the immigration judge should consider Petitioner's financial circumstances and alternative conditions of release. *Hernandez*, 872 F.3d at 1000. If Respondents fail to provide a timely bond hearing in accordance with this order, Respondents are ordered to immediately release Petitioner.

4. Respondents **SHALL** provide Petitioner's immigration counsel with at least **7 days' notice** of the bond hearing.

5. **Within 3 days** from the date of the bond hearing, Respondents are directed to file a notice in this court certifying compliance with this order and stating the outcome of the bond hearing, including a transcript or recording of the bond hearing.

**IT IS SO ORDERED.** The Court clerk shall enter this Order, enter judgment for Petitioner, provide copies to counsel, and **CLOSE** the file.

DATED September 4, 2026

REBECCA L. PENNELL
UNITED STATES DISTRICT JUDGE